This is Holloway v. Sprinkman for the appellant, Ms. Corwin, and for the athlete, Ms. Moulton. May it please the court, counsel. My name is Lisa Corwin and I represent the plaintiff in this case, Carol Holloway. Carol worked at the Eureka plant in Bloomington, Illinois, which is a factory where they made vacuum cleaners from 1962 to 1976. Later in life, she developed the disease asbestosis and filed a claim against Sprinkman, the defendant in this case, regarding its sale, installation, and use of asbestos-containing insulation products at the Eureka facility. Prior to the trial in this case, the court held a pretrial motions hearing where motions and limine were ruled upon. And one of the motions and limine that both parties wanted the court to address was whether or not evidence of other exposure to asbestos would be admitted at trial. And the court first heard Sprinkman's motion on that point, and it was a two-part motion. And the first part dealt with the manufacturers of the products that Sprinkman sold, installed, and delivered. And Sprinkman wanted to present to the jury the identity of those manufacturers. So we'd be talking about Owens Corning, K. Lowe, Eagle Pitcher, One Coat Cement, Johns Manville. In other words, the manufacturers of the products that Sprinkman sold and installed and delivered in the course of its business, including at the Eureka plant. And plaintiffs had no objection to that, and the parties actually agreed that both sides would be presenting to the jury testimony about the manufacturers of these products and the fact that the products contained asbestos and the identifying these companies, but they would all be companies associated with Sprinkman. In other words, they were the companies that Sprinkman had either contracted with or had purchased the products from to then resell to the various customers that it had, including the Eureka plant in Bloomington. The second part of Sprinkman's motion was that Sprinkman wanted to prevent, or sorry, that Sprinkman wanted to introduce evidence that Carol was exposed to asbestos at Eureka from another exposure that she had when she worked there. Namely, the parties discussed her work in this part of the plant called Area W, which we don't know a lot about, but it was run, an area of the plant that was associated with the federal government, and they used asbestos paper that was in the shape of disks, like circle-shaped asbestos paper for fuses and grenades. And that was one of the areas of the plant was used for that, and that was one of the, she testified she worked throughout the facility, but that was one of the jobs that she had there. And the court entered an order denying Sprinkman's motion on that point and said, you cannot introduce that evidence at trial because you have no witness who will offer any testimony that the sole proximate cause of her disease is this exposure in Area W. And otherwise, based on basic tort principles, the fact that you had another exposure is not relevant. It's no defense. That's consistent with LIPKE. That's consistent with IPI 12.04, 12.05. And in light of Nolan and the Nolan decision, you still can't admit evidence of other exposures. Generally, if you read the case, the Supreme Court said it has to be a sole proximate cause defense. You have to have some testimony or some evidence that you aren't responsible for this injury because this other exposure is the sole proximate cause of that injury. And plaintiff had a similar motion in Lemonnet also based on Nolan, which the court allowed, saying you can't introduce the evidence of this exposure under Nolan. So prior to trial, the court ruled that the parties could talk about the manufacturers whose products Sprinkman sold, delivered, and installed, but the parties could not discuss and could not bring out any exposure that Carol would have had to any other, to asbestos, including at this Area W where she worked. And in opening statements, counsel for Sprinkman violated the court's order in Lemonnet and specifically told the jury in opening statements, so the two issues that we will have in this case is whether Mrs. Holloway was exposed to an asbestos product sold or installed by Sprinkman at the Eureka plant. You will also hear testimony from Mrs. Holloway as to what one of her job duties was at the Eureka plant, and one of her job duties was to stuff grenades with asbestos. And that was told to the jury by defense counsel, reading from prepared remarks, standing behind a podium in front of the jury during opening statement, after the plaintiff had already given her opening statement, of course, not mentioning anything about this exposure in Area W because it had been correctly precluded by the court. And I objected, and the jury was taken out. They were taken out for approximately 30 minutes while the parties argued about whether or not the order had been violated and whether or not in my opening I had somehow opened the door. And the trial court ruled unequivocally that nothing that I had done in my opening opened the door, and further, if it had, the correct procedure would be to approach the court and to say, I think this door has been opened, rather than blow this order of lemonade out of the water during opening statement. And the court said, what relief do you want? And I asked for some time to think about it because another unusual circumstance we had in this case was that a mistrial would actually have benefited the defense in this case because the defense experts had not been videotaped and defense counsel could not persuade them to come to McLean County to testify in this case, and they had actually filed a motion to continue, which had been denied, which is also in the record and the reasons why. But the court, and I argued to the court, that a mistrial, which would be the typical relief, would actually benefit the party that had engaged in the misconduct in this case because if the trial was moved back in time, that would give them an opportunity to secure the testimony, which the court had proceeded with them not having, and they would actually benefit from their own misconduct. Further, our expert was already en route from Philadelphia and was not available the next week to testify. So I asked the court to enter an order defaulting Sprinkman on the issue of exposure and causation, essentially finding that a plaintiff was exposed to Sprinkman's products and that was the cause of her asbestosis. I think it's important to know in this case the severity of this violation of the order in Lemonet. This was a case where there were no defense experts. The testimony was completely one-sided as to the fact that Carol had asbestosis. I had a bee reader come in who testified that she had asbestosis. She testified that she was damaged and that she suffered damages. She talked about having to have her sister move in with her and care for her and shortness of breath and that. So really the only issue for this jury in this case was the issue of Sprinkman's exposure to the plaintiff being a cause of her asbestosis. And now the jury knew due to defense counsel's misconduct that Carol had this other exposure. And that was the core issue and the most significant issue in the case. I noticed in your brief that you make the statement that if there were to be a new trial, Sprinkman should be barred from calling their experts. Did you make that type of argument to the trial court? In other words, give the trial court that alternative or was it simply to have a default judgment and leave only the issue of damages to the jury? The first argument I made was for a default judgment and go to trial only on the issue of damages. In my post-trial motion, I asked the court for a new trial and sought the same relief I'm seeking here, which would be a new trial where these witnesses would not be permitted to testify. So that was part of my post-trial motion, which was denied. So I did ask the court for that after in my post-trial proceedings. And that was the first time you actually presented that to the court as an alternative at the post-trial stage? Right, because I would not have been able to proceed the following week to trial because my expert was unavailable that week. So basically, it would be the equivalent of a mistrial where we would scratch and start over. And again, if they were permitted to bring their experts at a mistrial, I would have to look at the transcript exactly. But I think I argued consistently that they shouldn't benefit from their misconduct. In fact, I took the position that Sprinkman had intentionally tried to get a mistrial based on what I observed occurring in the courtroom and the intentionality of the remarks. And I would just point out for the court, I know Sprinkman in their brief said the court made a reference to, I believe you, that it's unintentional. That was as to my allegation that they were trying for the mistrial. There was absolutely no testimony or evidence or representation ever that this violation of this order was anything but intentional. Under Illinois case law, you're entitled to a new trial if the order was specific. We have defense counsel in this record saying, I know what the order said. That's quoted in our brief, and that's right in the transcript of the trial. And it's in the pretrial motion transcript, too. Everybody was on the same page. The order was very specific. The violation was clear. The court found there was a clear violation. So we get to the issue of prejudice, which I've already touched on. And the plaintiff in this case was prejudiced and deprived of a fair trial in this case. I cited a number of cases, and one of them I can't pronounce. It's M-Y-K-Y-T-I-U-K, where they talk about how a party's credibility is hurt when you have a trial where you're telling the jury an opening statement, this is what the evidence is going to be. And then opposing counsel gets up and says, hey, here's this, you know, grenade, here's this dynamite evidence that's directly on point that you haven't heard from plaintiff's counsel. And in that case, the court said, even just trying to introduce the evidence that way is grounds for a mistrial because it hurts the plaintiff's credibility. And in this case, my credibility was hurt on the very issue that the case was going to revolve on because I stood before the jury and told them, this is what the evidence is going to be in this trial. This is what this case is about. And defense counsel then came in and said, guess what? This lady works stuffing asbestos into grenades. And plaintiff's counsel, of course, had never told them about that. Also, that case talks about causing undue attention by objecting. I objected. I had to object. I objected. The jury was taken out for 30 minutes. Right at that moment when that prejudicial testimony or that prejudicial remark was made, they then sat, you know, for about a half hour. Right after that happened, they came back and defense counsel was like, nothing further. And then they were sent home for the day. So that's how we ended that day with Sprinkman's counsel telling the jury that she stuffed grenades with asbestos. I know defense Sprinkman will argue that there was a limiting instruction. However, this court has indicated on multiple occasions, and we cite the cases, that sometimes limiting instructions are not enough. And I think you have to look at the gravity of the violation, but also the context and where this came out in the very beginning of the case. And the issue was such a central issue to the case. I would cite the Rush case authored by Justice Connect, where this court found that a limiting instruction was not sufficient. Also the third district, the Jackson case, another case where they said even though the trial court tried to correct the error, it wasn't sufficient because of what occurred. The second basis that I am asking for a new trial is because once we started the trial, Sprinkman's corporate representative or corporate witness, Mr. Kremers, started testifying under cross-examination. I called him as an adverse witness. And during the course of his testimony, I had asked him about when he learned about the harmful effects of exposure to asbestos. And he talked about a date in the 1980s. And he said that that's when OSHA came out. And that was relevant because one of our allegations in the complaint was about Sprinkman's failure to warn and failure to tell people about the hazards of asbestos and the fact that they knew and they had claims going back to the 1950s. And it was all sort of tied together with him also destroying the records. The way he testified, he learned about the hazards of asbestos. He learned about OSHA. He was trying to buy the company, and he ordered the destruction of all the records all at the same time. I asked him when he was on the stand if he thought he could be off when he testified about OSHA by 10 years or something like that because he said, I might be off by a year or two. And I said, do you think you could be off by 10 years? And he's like, no. No, I could not. And then he was a hostile adverse witness, as is apparent from the transcript. And then we had a break. And the way the judges do it is when you're on break, the jury is excused. They go back to the jury room, and the parties are free to go to the restroom, get a drink of water, whatever. But we have these conference rooms that are little closed rooms on the side of the courtroom. They're not in the courtroom, but they're on the side away from the judge. And during the break, lots of times people go into the side rooms, get a drink, whatever. We come back in, and I start questioning Mr. Crummers again. And he volunteers to me when I was asking him about abatement that, by the way, I think I was wrong about OSHA. And those dates I gave you when I was here before, actually, I think it was 1972, which, of course, is accurate. OSHA, the emergency standard came out in 71 for asbestos, but OSHA came in full force in 1972. And I thought it was odd that he had volunteered that, especially since he had just testified he couldn't be off by that number of years. And so I was asking him what happened at the break to make him change his testimony. And, of course, he then admitted that he had conferenced with counsel in the side room during the break, and that that had caused him to change his testimony. And the court at the time, and this is in my brief on page 21, the court found that the conversation had impacted his testimony. I'm reading from page 21 of my brief. The court said, certainly from the court's view, that conversation tipped your hand as to the fact that he might be wrong, because there was a comment made for him to think about it. And that's what he said that he was told. And she said that has led him to change his testimony. And we took a break again at the end of the day to go back and research it. And I can't find a civil case where this has happened before. But I did find a criminal case, the Pendleton case, where the court said you can't talk to a witness unless there's a legitimate need for it. And certainly this was not a legitimate need. As the court noted, it caused the witness to change his testimony. It impacted his testimony. And I might just be a bad researcher, and there is a case out there, but this is the first one I've seen in a civil situation where this has happened. And I couldn't find anything to present to the trial court, you know, where someone had this factual scenario had happened. In the criminal case, of course, the defendant got off as a result of this inappropriate conversation, and they just didn't retry the defendant. That's how they handle it in the criminal scenario. But again, in the civil case, I asked the court for relief, and the court the next day said that she wasn't going to give me any relief. So that was the second basis that I believe I'm entitled to a new trial, Carol Holloway is entitled to a new trial, is because of the witnesses changing their testimony based upon contact they had with defense counsel during a break. The third and fourth basis, directed verdict, and the verdict being against the manifest weight of the evidence, there was no contrary testimony. I should have had a directed verdict on her asbestosis. They had no witnesses. The cross-examination of my expert in no way impacted his diagnosis of her disease, and there was no one that said that she didn't have it. It was uncontroverted. They had no case. They didn't even put any witnesses on. But her cross-examination of my expert didn't impugn his testimony whatsoever. It didn't even cross him on his diagnosis. So I believe I'm entitled, based on this court's decisions, on a directed verdict as to her asbestosis. And then on the manifest weight of the evidence, I see my time is up, but I believe that plaintiff would be entitled to a new trial on that basis as well. We'll have additional time on rebuttal. Okay. Thank you. May it please the court, counsel. My name is Kathy Molchan, and I represent the entity Sprinkman Sons Corporation of Illinois, and I represented them in the Holloway trial. And it was just me by myself. I am the person who is to allege to have done the things complained of. So I would like to start with the comments that were made last by Ms. Corwin regarding Mr. Kremers. Mr. Kremers was a corporate representative of Sprinkman, and if this court is okay, instead of saying the full name Sprinkman Sons Corporation of Illinois, I'll just say Sprinkman. There are other entities with the name Sprinkman of them, so I don't want there to be any confusion. But I have represented Sprinkman for a number of years. Mr. Kremers has been the corporate representative for a number of years, and he is my client. He was on the stand, and he testified. And several times during his testimony, he said, my memory is not good, we are going back some 30-odd years, so on. During the break, I did meet with him, as is my right. I am his attorney. I did not tell him what to say. He was nervous. I said, just think about it. That's all. That's all I said. Basically, it's, relax, think about what you're saying. When he went back on the stand, he did say that, and he told the judge. She told me to think about it. That's all. So I'm sitting here looking at it, and I'm thinking about it. I'm thinking it may not be right. And two of the things that were not told to you by Ms. Corwin were, one, there was an easel sitting in front of him during his testimony, with all of these different dates on it, about when OSHA came out, when Sprinkman did this, when Sprinkman did that. And I believe that a picture of that easel has been made a part of the record. So you have that to look at. Afterwards, Ms. Corwin objected. We did have an argument. We did present written documentation in support of our positions. And one of the things that I did supply to the court was the many testimony or instances of testimony, whether at deposition or trial, that Mr. Kremers had given throughout the years where his dates were wrong. Sometimes he said 72, sometimes he said 83, sometimes he said other dates. I had no incentive to try to get him to say a specific date. Mr. Kremers told the court what had happened. We also did our research, and Ms. Corwin and I at least can agree on the fact that the People v. Pemberton case is the only case that we could find that was on point. And that case was a little different because in that case, the witness who had been on the stand was also the claimant. And she had talked with the state's attorney's office over the weekend. The state's attorney's office tried to hide that. There's no hiding here, and the big difference is this is my client, and I'm allowed to tell him, you may relax and get back on the stand. I think then if we go to the second big issue in this case, and that is the violation of the order in Lemony. First of all, Ms. Corwin was not correct. Sprinkman filed a motion in Lemony to try to bring in any and all exposures that Ms. Holloway had at the Eureka plant, not just the products that Sprinkman sold or installed. And as a backup, Sprinkman was an insulation contractor which sold and installed insulation at commercial and industrial settings. So it wanted any exposures, not just the products that it may have sold or installed. So that is the first thing. During opening statements, Ms. Corwin, again, had an easel on which she had written, sprinkle one coat, and I believe there's also been a picture that has been taken of this easel and made a part of the record. And on this she had identified sprinkle one coat, and sprinkle one coat was not ever a product manufactured by Sprinkman. It was sold by Sprinkman. Then she also had listed on their products such as Owens Corning, Johns Manville, Unibestus, and said that Sprinkman had sold and or installed all of these products at the Eureka plant. It is this defendant's position that that opened the door, and that was in violation of Lipke. Because for one, Sprinkman was not and is not responsible for every asbestos product that was ever used at the Eureka plant. Also, there was no evidence during this trial, and there were several people called. There was Jim Ferguson, who had been a Sprinkman insulator, who had testified that they used some asbestos, a Unibestus product at Eureka, but he didn't know where or when. Gary Murphy, who had been a Eureka employee, said he didn't know Sprinkman. There were no witnesses at all, including Mrs. Holloway's own testimony. Whoever said, I saw Mrs. Holloway working around anybody who had a Sprinkman name on them, around any insulating contractors. And as this court is aware of from the record, the Eureka plant was a huge plant. It covered many acres, many buildings. There's no evidence that Mrs. Holloway was ever exposed to a Sprinkman product. Then, also on behalf of Sprinkman, the order in limine, which we have just argued about, was also overly restrictive and impaired Sprinkman's defense in this case. Sprinkman did not have a chance to put on any expert witnesses. They weren't available. The judge denied my motion to continue. Sprinkman was, therefore, compelled to go to trial in a case without any expert witnesses, and the plaintiffs are arguing to Judge Foley, well, Nolan says that you need to have an expert to put on a sole proximate cause defense. What is a sole proximate cause defense? Well, Judge, under Nolan, and we can talk about this later, Nolan says a couple things here. One, if you're looking at FACR to do a substantial factor test, that shows cause and fact. You still have to get, then, to the legal causation fact. And they say, so it's a two-pronged test, you know, cause and fact, legal causation. So if you're trying to prove sole proximate cause, you're trying to prove even though that it may have been someone else's fault. And the Nolan court says you don't need expert testimony to do that. Any competent testimony can do that. For instance, any layperson would be able to know that a person who had been stuffing grenades with asbestos may have been exposed to them. Why? Why? I'm pretty familiar with asbestos cases. I've never seen one that had to do with grenades or the fuse or whether the fuse was sealed. No expert to my knowledge has testified in this case or any other case that I've ever read that touching that releases fibers the same way it does with the dust that accumulates on pipes or when pipes are damaged or cut. So how do we get to say that all you have to do is say she worked around these small disks which nobody's testified the consistency of them, what they're like, how much you have to touch them, how much asbestos is in them in terms of comparing them to the pipe covering products that we're most familiar with or the raw asbestos in the plants. How do you get to say that? How would a jury get to reasonably infer that absent testimony? Well, Judge, I think because any Mrs. Holloway could have testified as to what she did with them, whether or not she saw any dust from them. It could have been her own testimony that said, I worked with this when I was stuffing things up. I wasn't allowed to. How about the offer of proof? Wouldn't that be part of an offer of proof? It was, Judge, and I even tried. I wasn't allowed to do anything like that because the judge said I didn't have an expert witness to do that. Well, what's wrong with that given that we're talking about something that you and your opposing counsel are more familiar with the cases from around the nation, but this is a new one on me. So why don't you need an expert? We've got testimony from hundreds of cases about how the asbestos fibers float. They float all over the plant when they're disturbed, when they're cut, molded, shaped, run into by a forklift, or when they're dumped from bags as the raw product. We've got a history, a chronology of asbestos exposure. Do we have another case about fuses and grenades in a vacuum cleaner plant? I just threw that in because I didn't know they ever made grenades there. It's kind of interesting, but that's a sidelight. So what's wrong with requiring an expert? Well, I think the Nolan Court, the Supreme Court, Nolan says you don't need that, that a layperson, any person sitting on a jury can hear the witnesses and know if the fiber drift theory that you are just talking about, for the same reason, how are they allowed to present evidence of a fiber drift when there's been, and of all these fibers, when there's been no evidence that Sprinkman did any work at the Eureka plant? That there's been, there was no testimony that Mrs. Holloway ever worked in any area where Sprinkman did any work. She testified she worked all over the plant. Right. And one of the affidavits about somebody that, I mean, you would remember the affidavit better than I, there's a reference to the installation of products at the Eureka plant. No, the affidavit that you're talking about, Your Honor, is the affidavit of Wesley Klein. Wesley Klein was a truck driver for Sprinkman up until the early 80s. He testified that he delivered products to Eureka. That is it. He does not testify that any of these products were ever installed at Eureka, where they were used at Eureka. So Eureka hasn't delivered just to stockpile, not use them? Well, I don't know what was done with them. Okay. And that's the whole point is we don't know what was done with them, when anything was done with them, where anything was done with them. So if I may proceed. Yes. Thank you. Once again, it gets back to the basic issue, and that is that Sprinkman was not allowed to put on a defense. And the Supreme Court in Nolan said, the single paragraph in Lipke, which was relied upon by plaintiffs in their motion in Lemony and by the court in its ruling, from which exclusionary rule of other exposure evidence is derived, neither suggested nor held that a defendant should be barred from introducing evidence of other potential causes of injury where it pursues a sole proximate cause defense, nor that juries should be deprived of evidence critical to a causation determination. Even if this court assumes that Sprinkman was incorrect, in saying what it did during its opening statement, the error was harmless, because it was one sentence given at the beginning of what turned out to be five days' worth of testimony during the trial. No further evidence was ever brought out about it, and the jury was then able to make its own decision. Sprinkman did not do anything to further that after it was severely reprimanded, and counsel was in front of the jury by the judge, and the judge told the jury to disregard that comment. So even if this court finds that Sprinkman was in error, it was a harmless error. Does the court have any more questions? I do. I want to go back to my question, which was, what is the sole proximate cause defense? I've read the case, and I think I followed what you were saying, but here's what I'm getting at. If you're raising that defense, does your client have to show the sole responsible party, or does your client just have to establish that your client's conduct was not one of the proximate causes of the plaintiff's injuries? It's an interesting question, Your Honor, because what you're asking is, does the sole proximate cause shift the burden to the defendant? And I don't think under Thacker or Nolan that the court... I think the term sole proximate cause is kind of alien in the sense that that's not what the law recognizes. It recognizes a proximate cause. It may be a proximate cause among many proximate causes. So it's just a curious expression. And I don't think it is Sprinkman's burden to prove that it was someone else who caused the injury. Okay. So if Sprinkman can show that Sprinkman is not a proximate cause, would that suffice as a sole proximate cause defense? I think so. Okay. That's what I was trying to figure out. I had a question about... I was conflating the affidavit with the testimony that was read into the record from a deceased employee of your client. Jim Ferguson. Yeah. And he says they installed the product to your defendant at the Eureka plant. Right. But he doesn't say when the product was installed or where in the facility it was installed. Well, again, you're back to she worked all over the plant. I mean, she testifies to that. Nobody disputes that, do they? No. That's not... Okay. Well, during the period, did his time overlap with the period of time that she worked there? We don't know that, Your Honor. There was no testimony about when he installed it. And again, I think that goes to your earlier question of because of the fact that there was insulation installed at the plant, did the plaintiff need to put on an expert witness to show that it was still intact? Or when it was disrupted, that fibers flew from it into a place where Mrs. Holloway worked? Well, there is testimony about that thing, or it can be blown away from insulation pipes, or it can be blown away from employees' work clothes, or it can be redistributed around the factory by the movement of the inloader that sometimes actually causes the damage to the covering. So is it the idea that there's somewhere in the plant that's safe? It may be if it's in a separate enclosed building. I mean, these are enclosed buildings. This is not one large contiguous building. I understand. Thank you. Thank you. Real quickly on a couple of the other things that she said, then I'll get to the last thing that the court referenced. The court specifically found that the door was not opened. Counsel was not reprimanded in front of the jury at all. Kremers never said he'd change his testimony because of what was on an easel. Dr. Frank testified about fibers being released from insulation in the plant and fiber drift, and Gary Murphy, who worked in the plant, testified about the pipe covering being damaged and forklifts hitting it and things like that, and even Carol testified about that somewhat, although she didn't know that she was exposed to asbestos until she was diagnosed with asbestosis, didn't know about her own exposures, and that can happen when you're being exposed to asbestos and the air looks like it does in this courtroom, which is what Dr. Frank testified about because it's invisible, it's odorless, it's tasteless, and you can be exposed without knowing it. The proximate cause question I want to address, in Nolan, it doesn't say what counsel says that it says. It doesn't say you don't need expert testimony. On causation, you always need expert testimony on causation, and in fact, the McDonald case, which is the case that Sprinkman cites in its brief that says just competent testimony is sufficient, they left off the first half of the quote. The first half of the sentence says that that's only in medical negligence cases and that the ruling is restricted to medical negligence cases that as to causation, you don't necessarily have to have expert testimony. So that's the case that they cite for the proposition and they cut the sentence in half and only cite the second half of it. So approximate cause in asbestos cases, the way that the court ruled in Nolan and the way that the trial court enforces it, I can explain to the court. We would have a situation, and we do now, where you have, for example, brake manufacturers who get experts who say, yes, this plaintiff has mesothelioma, yes, that caused that person's death, but I as an expert say that the either fiber type that was in the brakes or the low percentage of asbestos that was in the brakes did not cause the mesothelioma, it was the insulation and only this insulation or this other exposure that caused the mesothelioma. And in that instance, the trial court will allow that expert to testify and that testimony will come in because that defendant, whether it be brakes or in Weill McLean, they were a boiler manufacturer. We have equipment manufacturers now that have the same type of experts that will say gaskets. Pump manufacturers will have experts that say the gaskets contained chrysotile asbestos, which isn't as dangerous as the type and pipe covering, which is an amosite fiber, and yes, this person had this disease and yes, they died from it, but it wasn't our product that caused it. And that's how the sole proximate cause defense, I believe, should be applied and that's how it says it in Nolan. Every reference in Nolan to other exposures, every single one, even in the quote that counsel read, said in connection with the sole proximate cause defense because otherwise it's not relevant. Otherwise that gets us back to the IPI and long-standing tort law that it's no defense that something else may have also been a cause. So it's not relevant. It's not admissible. You can't point to another defendant's product as being the cause of the injury unless you have someone that says, in fact, yes, that's the cause because otherwise you're just trying to pass blame onto another defendant. Does the court tend to eliminate the factor test, the frequency, regularity, and proximity, what you just argued? In what way? Well, in the sense that you have to have those three things to prove that there was a sufficient amount of exposure. Yeah, the plaintiff still has that burden and the plaintiff still has to prove that, but what the defendant can't do is what counsel wanted to do, which is say, oh, this lady stuffed asbestos into a grenade. In fact, it wasn't even asbestos. It was paper, and there was nothing tying that exposure to her disease. Even if their expert witnesses would have been allowed to testify, none of them offered that opinion. None of them were going to say, even if they came to trial, that in fact what she did in Area W  And so the plaintiff still has the burden under Thacker of proving frequency, regularity, and proximity, but a defendant in an asbestos case or in any other case, under general principles of tort law, it's not a defense to them that something else may also have been a cause, and so it's not relevant. And that's what the court says in Lipke, and that's what in Nolan they affirm. And they say, when they talk about Lipke, they say Lipke stands for no more than the well-settled rule that it cites, that the concurrent negligence of others does not relieve a negligent defendant from liability. And then they talk about, if a defendant's negligence approximately caused the harm, evidence that another's negligence may also have been an approximate cause is irrelevant. And that's why it's not admissible, because it's irrelevant that she was exposed to asbestos in Area W unless they can somehow tie it to her disease and her diagnosis. I don't know of any court that said that we just let the jury decide whether or not an exposure is a cause of the disease. I mean, there can be all different fiber types, there can be different amounts of fibers released, different, I mean, there has to be something tying that together, and I think that's what Nolan says, too. Thank you. We'll take this matter under advisement and stand in recess until the readiness of the next case.